UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| Cynthia Banda, as Representative of the Estate of Melissa Banda, *Plaintiff*, <br><br> v. <br><br> City of McAllen *Defendant*. | Civil Action M-23-341 |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 2. Pending before the court is Defendant's First Motion to Dismiss Plaintiff's Fifth Amended Complaint Pursuant to Rule 12(b)(6), ECF No. 25, and Plaintiff's Request for Leave to Amend, ECF No. 28 at 10. Leave to amend is **DENIED**. The court recommends that the motion to dismiss be **GRANTED**.

### 1. *Background*

Plaintiff Cynthia Banda, as Representative of the Estate of Melissa Banda, filed this lawsuit asserting survival and Equal Protection Clause claims after her sister, Melissa Banda (Melissa), was murdered by her abusive ex-husband, Richard Ford. Pl.'s 5th Am. Compl., ECF No. 24 (5th Am. Compl.). Melissa reported Ford's abuse, harassment, and stalking to the City of McAllen Police Department on at least eleven occasions and obtained numerous protective orders against Ford. *Id.* at 3–7. According to Banda, the City of McAllen (the City) did little in response to Melissa's frequent pleas for protection. *Id.* Ford ultimately kidnapped and killed Melissa on August 6, 2020. *Id.* at 3; *see also* ECF No. 30 (status update advising the court that Ford was found guilty of the

capital murder of Melissa Banda and sentenced to life in prison without the possibility of parole).

The following facts are taken from Plaintiff's Fifth Amended Complaint. The court accepts the facts in the Fifth Amended Complaint to be true, as it must do at this stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

Melissa filed a petition for divorce against Ford on November 7, 2019. 5th Am. Compl. at 3. She obtained temporary restraining orders against him at the same time. *Id.* When Ford was served with Melissa's divorce petition and temporary restraining orders on November 21, 2019, Melissa "called the City of McAllen Police Department for protection from [Ford] because [Ford] was on his way to her home." *Id.* (emphasis omitted).

On February 28, 2020, Ford "assaulted [Melissa] by choking her and impeding her breathing." 5th Am. Compl. at 3. Ford threatened to harm his and Melissa's children if Melissa reported the assault. *Id.* at 4. Melissa, "believing that [the police] could protect her, nevertheless reported the incident to the City of McAllen Police Department." *Id.* (emphasis omitted). On February 29, 2020, Ford was arrested, and Melissa applied for and obtained an emergency protective order against Ford. *Id.* Ford was released from jail on March 1, 2020. *Id.* Melisa obtained a temporary protective order against Ford on March 26, 2020. *Id.*

On April 7, 2020, the divorce was finalized. 5th Am. Compl. at 4. The court granted Ford supervised visitation with the children and ordered him to take anger management courses. *Id.* Ford sought to modify the divorce decree, and a hearing was set for August 6, 2020. *Id.* In the meantime, Ford continued to torment Melissa. *Id.* at 4–6.

"A City of McAllen Police Department incident report indicates that [Ford] violated the protective order on Saturday,

April 18, 2020, and that [Melissa] was willing to file charges." 5th Am. Compl. at 4–5. That same day, Officer Gonzalez of the McAllen Police Department was provided with a copy of the active protective order stating that Ford was prohibited from being within 200 feet of Melissa and that the final protective order would be issued the following week. *Id.* at 5. "On April 23, 2020, communications at . . . [the McAllen Police Department] advised one of its officers that [Melissa] had an active Emergency Protective Order[.]" *Id.*

On June 8, 2020, Melissa called the police department to report that Ford was stalking her by following her and watching her while at the gym. 5th Am. Compl. at 5. The police did not arrest Ford. *Id.* On June 30, 2020, Melissa called the police department to report that Ford had violated the protective order and was harassing her. *Id.* Melissa advised Officer Perez of the McAllen Police Department of the protective order, but the police did not arrest Ford. *Id.* On July 7, 2020, Melissa called the police department to report her suspicion that Ford had appropriated her image "on a website offering 'service from a female' resulting in [Melissa] receiving text messages to this effect." *Id.* On July 8, 2020, Melissa called the police department to report that Ford was stalking her and that she suspected Ford had placed a tracking device on her vehicle. *Id.* at 6. On July 17, 2020, Melissa called the police department to report that she had received twenty-eight phone calls from Ford between July 16–17, 2020. *Id.* Officer Balboa of the McAllen Police Department reviewed screenshots showing the twenty-eight phone calls to Melissa's phone and confirmed that there was an active protective order in place. *Id.* The police did not arrest Ford. *Id.* On July 18, 2020, Melissa called the police department to report that Ford had again violated the protective order, but the police did not arrest him. *Id.* On July 20, 2020,

3

Melissa called the police department to again report that she suspected Ford of impersonating her online. *Id.* On August 5, 2020, the day before the modification hearing, Melissa called the police department to report that Ford had likely taken a vehicle from her home. *Id.*

On August 6, 2020, at about 3:49 p.m., the McAllen Police Department received a call indicating that Melissa had been kidnapped by Ford. 5th Am. Compl. at 6. On August 6 or 7, 2020, the police department finally arrested Ford. *Id.* at 6–7. Melissa's body was found on the side of a rural road in Donna, Texas. *Id.* at 7. Melissa's death was due to an incised wound to the neck. *Id.* Ford has been found guilty by a jury of Melissa's murder and sentenced to life in prison without the possibility of parole. ECF No. 30 at 1.

Banda alleges that the City, "acting through its police department, condoned a pattern or practice of affording inadequate protection, or no protection at all, to women who have complained of having been abused by their husbands, ex-husbands, or others with whom they have had [a] close relationship." 5th Am. Compl. at 11. Among other things, Banda alleges that the City's pattern or practice led to the police department's inadequate response to Melissa's complaints, resulting in her death. *Id.* at 8–12.

The City has moved to dismiss under Rule 12(b)(6) and argues that Banda has not adequately pleaded a claim for municipal liability under *Monell*[1] and has not satisfied her burden under the Fifth Circuit's duty-to-protect framework. ECF No. 25 at 7–15.

---

[1] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

4

## 2. Legal Standards

### A. Rule 12(b)(6)

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, the court is constrained to the "four corners of the complaint" to determine whether the plaintiff has stated a claim. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011); *see also Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698, 708 (S.D. Tex. 2002) ("the court may not look beyond the four corners of the plaintiff's pleadings.").

Under Rule 12(b)(6), the court determines whether the plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

Courts accept "all well-pleaded facts as true" and "view[] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "A plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019). "Factual allegations

must be enough to raise a right to relief above the speculative level ... on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Id.* at 556.

Only statements of *fact* are to be taken as true. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Conclusory allegations are "disentitled ... to the presumption of truth." *Iqbal*, 566 U.S. at 681. The court, in reviewing the plaintiff's complaint, may neither "accept conclusory allegations" nor "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

### B. Section 1983

To prevail on a Section 1983 claim, a plaintiff must establish that the defendant deprived the plaintiff of her constitutional rights while acting under color of state law. *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017). The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

A municipality may be held liable under Section 1983 only for its own illegal acts, not pursuant to a theory of vicarious liability. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The plaintiff must demonstrate that the city "had some inadequate custom or policy that acted as the moving force behind a

constitutional violation." *Fagan v. Howard Cty., Tex.*, 494 F.3d 518, 522 (5th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978); *see also Connick*, 563 U.S. at 61.

The specific identity of the policymaker is a legal question that need not be pleaded. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). Official policy includes policy statements, ordinances, regulations, or decisions officially adopted and promulgated by the municipality's lawmakers or an official to whom the lawmakers have delegated policy-making authority. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.

The "moving force" element requires that the plaintiff "show that the municipal action was taken with the requisite degree of culpability and . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). As for culpability, the municipality must have been at least deliberately indifferent to the known or obvious consequences of municipal actions. *Id.* The plaintiff must also show proximate cause. *Rheuark v. Shaw*, 628 F.2d 297, 305 (5th Cir. 1980).

The Fifth Circuit has recognized that, under limited circumstances, a municipality may be held liable under Section 1983 based on its law enforcement policies, practices, and customs that treat victims of domestic assault differently from other crime victims. *Shipp v. McMahon*, 234 F.3d 907, 913–14 (5th Cir. 2000) (collecting cases). In recognizing such a claim, the Fifth Circuit held that plaintiffs must show: "(1) the existence of a policy, practice, or custom of law enforcement to provide less protection to

7

victims of domestic assault than to victims of other assaults; (2) that discrimination against women was a motivating factor; and (3) that the plaintiff was injured by the policy, custom, or practice." *Id.* at 913. To show that discrimination was a motivating factor, a plaintiff must show that the policy is "the product of *invidious discrimination.*" *Beltran v. City of El Paso*, 367 F.3d 299, 305 (5th Cir. 2004) (alteration in original) (citing *Shipp*, 234 F.3d at 914).

### 3. Analysis
#### A. Banda Failed to Plead an Equal Protection Claim under Shipp

Under the two-step inquiry outlined in *Iqbal*, the court first identifies and disregards conclusory allegations. *Iqbal*, 556 U.S. at 664. Legal conclusions, or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled the assumption of truth. *Id.* at 678. Neither "unsupported conclusions . . . of mixed fact and law" nor "unwarranted deductions" are acceptable. *Southland Sec.*, 365 F.3d at 361; *Stanton v. United States*, 434 F.2d 1273, 1276 (5th Cir. 1970). Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 664. The court may not "strain to find inferences favorable to the plaintiffs." *Southland Sec.*, 365 F.3d at 361. Under these standards, Banda has failed to plead facts sufficient to show the first two elements set forth in *Shipp*.

The court turns first to *Shipp*'s requirement that the plaintiff show the existence of a policy, practice, or custom of law enforcement to provide domestic assault victims with less protection *than victims of other assaults*. Banda's Fifth Amended Complaint pleads both facts and conclusions. Banda has pleaded detailed facts pertaining to Melissa's repeated complaints about Ford to the McAllen Police Department. 5th Am. Compl. at 3–6.

She has shown history of calls, reports, and interactions with City of McAllen employees and police officers. *Id.* And she has shown that the lack of response may have led to Melissa's death. *Id.* at 6–7. If the only questions were whether the police ignored Melissa and whether the police department's failures led to Melissa's death, Banda's pleadings would arguably be sufficient. But that is not the only question that underlies *Shipp*'s first element. Banda must show that the police department's policy was to treat victims of domestic assault less favorably than victims of other types of assault. *Shipp*, 234 F.3d at 913. She has not done that. There are no facts alleged by which the court can compare the McAllen Police Department's treatment of domestic assault to its treatment of other assaults. Banda asks the court to infer that the McAllen Police Department treats victims of other types of assaults better than Melissa was treated. The court may not "strain to find inferences favorable to the plaintiff[]." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Banda alleges that Melissa's "own experience with [the] City of McAllen Police Department is evidence of . . . a pattern of treating domestic assault cases involving women and/or Hispanic women less seriously than other classes of assaults." 5th Am. Compl. at 11 (emphasis omitted). The court disagrees. Melissa's experience, while tragic, says nothing about how the McAllen Police Department deals with other types of assaults.

Banda also alleges that City "condoned a pattern or practice of affording inadequate protection, or no protection at all, to women who have complained of having been abused by their husbands, ex-husbands, or others with whom they have had close relationship," *id.* ¶ 67, and that "No rational basis existed for [the City's] alleged policy of affording female victims of domestic violence less police assistance than other crime victims," *Id.* ¶ 69.

9

These allegations are "conclusory and not entitled to be assumed true." *Cf. Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554–555). Banda has not alleged *facts* from which the court can find that the City of McAllen had a practice of treating victims of domestic assault less favorably than victims of other assaults.

Banda has also failed to plead facts showing that discrimination against women was a motivating factor for its policy. *Cf. Shipp*, 234 F.3d at 913. As to this element, Banda alleges that: (1) "Discrimination against women and/or Hispanic women was a motivating factor" by the City in the failure to arrest Ford or protect Melissa; and (2) Melissa "was the victim of purposeful discrimination[] because of her ethnicity and/or gender[.]" 5th Am. Compl. at 11, 12. These conclusory allegations are mere threadbare recitals of the elements of Banda's cause of action. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Conclusory allegations are "disentitled . . . to the presumption of truth." *Id.* at 681.

Moreover, the second element of *Shipp* requires Banda to show that the complained of policy is the product of invidious discrimination. *Beltran v. City of El Paso*, 367 F.3d 299, 305 (explaining that the plaintiff had failed to show that the city's complained of policy "was the result of an effort to discriminate against women"). Banda does not allege any facts showing that the City of McAllen had an intent to discriminate against women. *Cf. Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 887 (W.D. Tex. Sept. 27, 2019) (finding similar allegations insufficient to state a claim under *Shipp* and granting dismissal).

### B. Leave to Amend is Denied

"Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Davoodi v.*

10

*Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). If the plaintiff seeks leave to amend, she "must give the court at least some notice of what . . . her amendments would be and how those amendments would cure the initial complaint's defects." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (citation omitted). The court may deny leave "[i]f the plaintiff does not provide a copy of the amended complaint [or] explain how the defects could be cured[.]" *Id.* (citation omitted). The court may also deny leave to amend when amendment would be futile or when the plaintiff chooses to stand on her complaint and argues that it satisfies the pleading requirements. *See Khoury v. Thota*, No. 20-20578, 2021 WL 3919248, at *4 (5th Cir. 2021) (affirming the district court's denial of leave to amend when the plaintiff chose to stand on his complaint and argued that it satisfied the pleading requirements); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (discussing futility of amendment as justification for denying leave to amend).

Here, Banda has had five opportunities to state her case. Banda's most recent amendment was made post-removal and with the benefit of discovery regarding the police department's policies and procedures for enforcing protective orders. ECF No. 23 (January 12, 2024 Minute Entry Order directing the City to turn over by January 19, 2024, "the Police Department's policies and procedures for enforcing protective orders" and stating that "Plaintiff's Amended Complaint is due by January 31, 2024"). Moreover, when leave to file the Fifth Amended Complaint was granted, the undersigned stated:

> Federal Rule of Civil Procedure 15(a)(2) requires that leave to amend at this stage be freely given. Moreover, it would be a massive waste of judicial resources for

11

> the court to evaluate the current pleadings only to learn that Plaintiff has other facts at her disposal. The court will grant leave. *That being said, the court is mindful of the number of times that Plaintiff has amended her petition. Plaintiff shall set forth all of the relevant facts that she believes support her Monell claim. She should address all the deficiencies that have been identified in the City's motion to dismiss.*

ECF No. 15 at 7–8 (emphasis added). Banda's request for leave to amend does not state how a sixth amended complaint would cure the deficiencies raised by the City. *See* ECF No. 28 at 11. Although Banda states that "New information about [the City's] conduct has come to light in [Ford's] recently concluded criminal trial," Banda does not elaborate on what that new information is or explain how it would cure any deficiency. *Id.* Nor has Banda provided the court with a proposed sixth amended complaint. Accordingly, amendment would be futile, and leave to amend is denied.

### 4. Conclusion

Banda's request for leave to amend, ECF No. 28 at 10, is **DENIED**. The court recommends that Defendant's First Motion to Dismiss Plaintiff's Fifth Amended Complaint Pursuant to Rule 12(b)(6), ECF No. 25, be **GRANTED**, and that Plaintiff's claims against Defendant be **DISMISSED WITH PREJUDICE**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal

conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on May 24, 2024.

_____
Peter Bray
United States Magistrate Judge